653 P.2d 803

James MASON, Plaintiff-Appellant,

v.

STATE of Idaho, DEPARTMENT OF LAW ENFORCEMENT,
Defendant-Respondent.

No. 14377.

Court of Appeals of Idaho.

Oct. 19, 1982.

partment found that Mason had refused to submit to a blood-alcohol test after he was arrested for operating a motor vehicle while under the influence of intoxicating beverages.[1]

On appeal, James Mason contends his arrest was illegal and therefore he could not be required to submit to the test. He also contends that the state failed to prove that he refused to take the test. We affirm the order of the district court, upholding suspension of the license.

### I.

Mason first argues that because he was not legally arrested, he was not obliged to submit to a blood-alcohol test and should not have had his driver's license suspended by the Department for refusing to submit to the test. Following an administrative hearing in the Department of Law Enforcement, the hearing officer concluded that Mason's arrest was lawful. Mason asserts, however, that insufficient facts were within the arresting officer's knowledge, at the time Mason was detained, for the officer reasonably to believe that any crime had been committed.

John M. Ohman, of Cox & Ohman, Idaho Falls, for plaintiff-appellant.

David H. Leroy, Atty. Gen. by Lynn E. Thomas, Sol. Gen., Boise, for defendant-respondent.

WALTERS, Chief Judge.

This is an appeal from an order of the district court upholding suspension of a driver's license by the Department of Law Enforcement. The suspension was imposed pursuant to I.C. § 49–352, because the De-

The lawfulness of Mason's arrest depends upon whether the arresting officer had reasonable cause to believe that Mason (a) had been driving or was in actual physical control of a motor vehicle, (b) while under the influence of intoxicating beverages. I.C. § 49–1102. In this regard, the hearing officer made the following findings. Prior to Mason's arrest, police officer Finley observed Mason driving his automobile on a city street, in such a way as to occupy two traffic lanes. Officer Finley observed Mason park his vehicle, at which time Mason's

---

1. At the time of this incident, I.C. § 49–352 provided in part:

   I.C. § 49–352. Any person who operates a motor vehicle or motorcycle in this state shall be deemed to have given his consent to a chemical test ... for the purpose of determining the alcoholic content of his blood, provided that such test is administered at the direction of *a police officer having reasonable [grounds] to believe such person to have*

   *been driving in an intoxicated condition....* If such person having been placed under *arrest* and having thereafter been requested to submit to such chemical test refuses to submit to such chemical test the test shall not be given but the director [of the Department of Law Enforcement] shall suspend his license or permit to drive and any nonresident operating privilege for a period of ninety (90) days.... (Emphasis supplied.)

vehicle collided slightly with another parked vehicle. As Mason parked and exited his car, he was also observed by two other officers, Miller and Parker, to be walking in an unsteady fashion and staggering slightly. When Officer Miller approached Mason and requested him to exhibit his driver's license, Mason had difficulty in removing it from his wallet. He had an odor of intoxicants about him. Officers Miller and Parker requested Mason to take certain field dexterity tests. When Mason performed those tests unsatisfactorily, he was arrested by Miller and transported to jail.

Based upon these findings, the hearing officer concluded that the police officers had reasonable grounds to believe Mason had been operating his vehicle while he was under the influence of intoxicating beverages. The hearing officer concluded that Mason was lawfully arrested after the police had an opportunity to observe his driving, and after the unsuccessful attempts to perform the field dexterity tests.

Mason contends, however, that his arrest was tainted by an unlawful "seizure" of his person by Officer Miller, at the time he was initially detained and asked to perform the field dexterity tests. In his brief on appeal, Mason acknowledges that Miller had been dispatched to assist Officer Finley in investigating a possible offense of driving while under the influence, and that Miller had arrived at the scene in time to observe Mason drive into the parking lot, park, and exit the vehicle. Mason argues that Miller did not have sufficient facts within his knowledge to justify the initial detention. We disagree.

■ It is true that whenever a police officer accosts an individual and restrains his freedom to walk away—even briefly—the officer has "seized" that person. *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). However, such a "seizure" is permissible under the Fourth Amendment if it is reasonable. *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). An investigatory stop, such as occurred

here, in order to be reasonable and permissible, "must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981). The sufficiency of cause justifying an investigatory stop depends upon the totality of the circumstances. Based upon "the whole picture," the detaining officer must have a particularized and objective basis for suspecting the person stopped of criminal activity. *Id.* at 417–18, 101 S.Ct. at 695.

■ Here Officer Miller arrived at the scene in response to a call from Officer Finley, who had observed Mason's erratic driving, and who had summoned assistance for investigation of a possible violation of I.C. § 49–1102. Miller observed Mason operate his vehicle. He observed Mason exit the vehicle, stagger, and walk unsteadily. He detected the odor of alcohol on Mason's person. It was at that point that Miller "detained" Mason by asking to see his driver's license and requiring performance of the field dexterity tests. We hold that there was a sufficient objective basis for Officer Miller to detain Mason for further investigation. The stop was therefore permissible. It did not taint the subsequent arrest after Mason failed the field dexterity tests.

## II.

Next, Mason contends that the state did not carry its burden of proof at the suspension hearing, regarding his refusal to take a chemical test. He argues that the testimony is conflicting as to whether he was requested to take the test. He contends, and we agree, that the burden of proof in a license suspension hearing is upon the Department to show, by a preponderance of the evidence, that the chemical test was offered and refused. However, he further contends that we should independently weigh the conflicting evidence to determine whether the Department carried this burden. We do not agree with this latter contention.

■ The applicable standard for judicial review of findings made at an administrative hearing is statutory. I.C. § 67–5215(g) specifically provides that the court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." The "preponderance of evidence" standard is a weight-of-evidence standard. *See Big Butte Ranch, Inc. v. Grasmick,* 91 Idaho 6, 415 P.2d 48 (1966). For us to weigh conflicting evidence, in judicial review of administrative cases, would be incompatible with I.C. § 67–5215(g). This statute further provides, as to factual determinations made by an administrative hearing officer, that:

> The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> .    .    .    .    .
>
> (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record...

The "clearly erroneous" standard is the one we must apply to the instant case.

■ The hearing officer found that after Mason was transported to jail he refused to comply with several requests by Officers Miller and Parker to take a blood-alcohol test. The hearing officer further found that the provisions of I.C. § 49–352 were read to Mason and that, despite being advised of the consequences of refusing to take the chemical test, Mason continued in his refusal. We hold that the findings of the hearing officer are not clearly erroneous in view of the reliable, probative, and substantial evidence in the record. Those findings in turn support the conclusions made by the hearing officer.

Accordingly, the order of the district court, upholding the suspension of Mason's license, is affirmed.

BURNETT and SWANSTROM, JJ., concur.