47 P.3d 1271

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Karen Daily SCHMIDT, Defendant–Appellant.**

No. 27146.

Court of Appeals of Idaho.

May 14, 2002.

**302**

Hutchinson, Lammers Clark, Chtd., Twin Falls, for appellant. Rockne K. Lammers argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

GUTIERREZ, Judge.

Karen Daily Schmidt appeals from the district court's appellate decision reversing the magistrate's order suppressing certain evidence seized from a vehicle in which she was a passenger. We reverse the district court's appellate decision and affirm the magistrate's order granting Schmidt's motion to suppress.

## I.

### FACTS AND PROCEDURE

At approximately 6:49 p.m. on December 29, 1999, Gooding County Deputy Robert Morgado was on routine patrol, driving southbound on Highway 1950 East, south of Wendell. Morgado noticed a white vehicle parked twenty to thirty feet off on the right side of the road in an unimproved pullout. Believing that the vehicle had perhaps run off the road or had an accident, Morgado stopped to investigate. Morgado parked his patrol vehicle directly in front of the other vehicle and left the headlights on bright. In addition, Morgado's overhead lights were activated and the position of Morgado's patrol vehicle essentially blocked any exit route. Morgado approached the vehicle and as he did so, he noticed the passenger, later identified as Schmidt, trying to hide something either underneath the dashboard or between her legs.

Morgado proceeded to the driver's side of the vehicle to ask the driver if she was okay. When the driver rolled down the window, Morgado detected an odor of what he believed to be marijuana coming from the vehicle. He asked the driver for identification and she provided a valid driver's license. Morgado then walked around to passenger Schmidt's side of the vehicle, opened the door, and asked both the driver and Schmidt to exit the vehicle. After reading the two women their *Miranda* rights from a card, Morgado asked them if they possessed any marijuana. Schmidt admitted to having a marijuana bud in the ashtray of the vehicle. Morgado then asked the driver for permission to search the car and she agreed. The subsequent search revealed a marijuana bud in the ashtray, a minimal amount of a green leafy substance scattered along the center

console, cigarette-rolling papers and Visine eye drops.

Schmidt was arrested and charged with misdemeanor possession of marijuana, I.C. § 37–2732(c)(3), and misdemeanor possession of drug paraphernalia, I.C. § 37–2734A. Schmidt filed a motion to suppress any statements she made at the scene and evidence seized from the vehicle. After a suppression hearing, the magistrate granted Schmidt's motion to suppress. The state appealed to the district court, and the district court reversed the magistrate's order. Schmidt now appeals, arguing that her initial detention was constitutionally unreasonable.

## II.

### STANDARD OF REVIEW

■ On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *State v. Bowman,* 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct.App.1993). The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App. 1996). Here, the magistrate's findings of fact have not been challenged. Thus, we exercise free review in determining whether the police encounter at issue was reasonable under the Fourth Amendment.

## III.

### DISCUSSION

In the proceedings below, the state argued that Schmidt's initial detention was constitutionally reasonable pursuant to Morgado's community caretaking function. However, the magistrate did not view Morgado's con-

duct as consistent with his community caretaking function. The magistrate concluded that because the vehicle in which Schmidt was a passenger was lawfully parked a safe distance from the road and there was no visible evidence, either from the appearance of the vehicle or the condition of the roadway, that the vehicle had been in an accident, it was unreasonable for Morgado to believe that the occupants of the vehicle were in need of immediate assistance.

On the intermediate appeal to the district court, the district court reversed the magistrate's order. The district court held that under a totality of the circumstances, Morgado had a duty to stop and investigate a vehicle that may have been in an accident. On the present appeal, Schmidt asserts that the district court erred by reversing the magistrate's order granting her motion to suppress because the community caretaking function analysis was not applicable.[1]

■ The community caretaking function involves the duty of police to help individuals officers believe are in need of immediate assistance. *State v. Mireles,* 133 Idaho 690, 692, 991 P.2d 878, 880 (Ct.App.1999). As stated in *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973):

> Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Id.* at 441, 93 S.Ct. at 2528, 37 L.Ed.2d at 714–15.

■ In analyzing community caretaking function cases, Idaho has adopted a totality of the circumstances test. *State v. Wixom,* 130 Idaho 752, 754, 947 P.2d 1000, 1002 (1997). The constitutional standard is whether the intrusive action of the police was reasonable in view of all the surrounding

---

1. There is no dispute that the vehicle in which Schmidt was a passenger was seized for purposes of the Fourth Amendment. Additionally, the state does not argue that Morgado had rea-

sonable, articulable suspicion of criminal conduct that would justify seizing the vehicle. Rather, the state relies solely on the community caretaking function to justify the seizure.

circumstances. *Id.* Reasonableness is determined by balancing the public need and interest furthered by the police conduct against the degree and nature of the intrusion upon the privacy of the citizen. *State v. Godwin,* 121 Idaho 491, 495, 826 P.2d 452, 456 (1992). In order for the community caretaking function analysis to apply, an officer must possess a subjective belief that an individual is in need of immediate assistance, although the officer may harbor at least an expectation of detecting or finding evidence of a crime. *See In re Clayton,* 113 Idaho 817, 818, 748 P.2d 401, 402 (1988); *State v. Deccio,* 136 Idaho 442, 445, 34 P.3d 1125, 1128 (Ct.App.2001).

In the instant case, although Morgado may have held a subjective belief that the occupants of the car were in need of immediate assistance, his belief was not reasonable in view of all the surrounding circumstances. As the magistrate found, Morgado did not receive any notice from dispatch that there were any emergencies involving vehicles in the area nor did he have any reports from any other source that this particular vehicle was stranded or abandoned. There was no debris or skid marks on the roadway, and the roadway was not slick with ice, snow or rain so as to create the possibility of a slide-off. The exterior appearance of the vehicle did not indicate that it had been involved in an accident. There was no visual evidence that the vehicle left the road in a reckless or inattentive manner. Further, the vehicle was parked in a lawful and safe manner at least twenty feet from the roadway in an area described by Morgado as a "pull out." It is undisputed that it was off the roadway and not a safety hazard. Moreover, Morgado did not observe anything about the vehicle's occupants that led him to believe they were in need of assistance. The only information that Morgado possessed was that the vehicle was parked with its lights off, facing oncoming traffic in a place he had never seen a car parked before.

In reversing the magistrate's order granting Schmidt's motion to suppress, the district court relied heavily on *In re Clayton,* 113 Idaho 817, 748 P.2d 401 (1988). However, the present case is distinguishable from *Clayton.* There, an officer approached a vehicle parked near a bar, with its lights on, the motor running, and the driver slumped over the wheel. The Idaho Supreme Court held that in those circumstances, the officer's actions were consistent with his caretaking function. In the instant case, however, there were no such indications that the occupants of the vehicle were in need of assistance. The vehicle was lawfully parked a safe distance from the road with its lights off. Therefore, we uphold the magistrate's determination that the facts were insufficient to justify the seizure of the vehicle in which Schmidt was a passenger, under the community caretaking function. We also uphold the magistrate's conclusion that because the initial detention was unreasonable and unlawful, the reasonable, articulable suspicion of criminal activity that Morgado developed after contacting Schmidt and the driver cannot be relied upon in order to justify the subsequent investigative detention. *See State v. Fry,* 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct.App. 1991).

## IV.

## CONCLUSION

We conclude that the information possessed by Morgado did not justify the initial detention of the vehicle in which Schmidt was a passenger pursuant to the community caretaking function. In addition, we conclude that the reasonable and articulable suspicion that Morgado developed after contacting the vehicle's occupants cannot be relied upon to justify the subsequent investigative detention. Accordingly, we reverse the district court's appellate decision and affirm the magistrate's order granting Schmidt's motion to suppress. This case is remanded for further proceedings consistent with this opinion.

Chief Judge PERRY and Judge LANSING, concur.