141 P.3d 1166

**STATE of Idaho, Plaintiff–Respondent,**

v.

**John Fitzgerald CUTLER, Defendant–Appellant.**

**Nos. 31486, 31487.**

Court of Appeals of Idaho.

July 14, 2006.

Molly J. Huskey, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Carol L. Chaffee, Deputy Attorney General, Boise, for respondent.

PERRY, Chief Judge.

In these consolidated cases, John Fitzgerald Cutler appeals from his judgments of conviction, entered following his conditional pleas of guilty to possession of a controlled substance and possession of a controlled substance with intent to deliver. Specifically, Cutler challenges the district court's orders denying his motions to suppress. We affirm.

## I.

## FACTS AND PROCEDURE

At approximately 6:30 a.m. on May 8, 2004, an ambulance responded to a report of an incoherent man, later identified as Cutler, sitting in the driver's seat of a parked vehicle in front of a closed store. A police officer dispatched to assist the ambulance arrived at the scene and observed three medical personnel evaluating Cutler through the open vehicle door. The medical personnel informed the officer that Cutler was extremely lethargic but did not appear to need immediate medical assistance. The ambulance then departed. When the medical personnel moved away from Cutler's vehicle, the officer observed a handgun on the ledge between the driver's seat and the doorsill. The officer removed the handgun from the vehicle and ascertained that it was unloaded. Cutler was removed from the vehicle and placed him into handcuffs. The officer told Cutler that he was not under arrest but was being handcuffed for safety purposes. The officer frisked Cutler for other weapons and discovered two pocket knives and a loaded magazine for the handgun.

The officer returned to Cutler's vehicle to ascertain if there were any other weapons, picked up an enclosed case in the passenger compartment, and determined that an object inside felt like a pipe. Cutler then admitted that the bag contained a methamphetamine pipe. Cutler opened the bag at the officer's request, revealing a methamphetamine pipe and methamphetamine. The officer placed Cutler under arrest for possession of a controlled substance. I.C. § 37–2732(c)(1). The state alleged that, because methamphetamine and the pipe were found in Cutler's vehicle, it was subject to forfeiture. The state obtained a warrant for the seizure of Cutler's vehicle. In a search of the vehicle following service of the warrant, police discovered several baggies containing methamphetamine, scales, and $1435. Cutler was thereafter charged with possession of a controlled substance with intent to deliver. I.C. § 37–2732(a)(1)(A).

On June 22, Cutler pled not guilty to both charges. On August 18, Cutler filed motions to suppress. Cutler alleged that the officer discovered the methamphetamine forming the basis of the first charge in violation of his right to be free from unreasonable searches and seizures and, therefore, the warrant for seizure of his vehicle was invalid. Cutler thus argued that the evidence found during both searches should be suppressed. The state responded that Cutler's motions to suppress were untimely and that the searches of Cutler's vehicle were lawful.

At the hearing held on Cutler's motions to suppress, Cutler's attorney admitted that he had not timely filed the motions because of his large caseload. The district court reserved ruling on whether there was a basis to excuse the untimely filing of the motions. The officer who initially arrested Cutler testified that he remained at the scene following the ambulance's departure because he felt obligated to ascertain whether Cutler needed assistance. The officer indicated that he searched Cutler's vehicle for weapons because he wanted to ensure Cutler did not have access to a weapon when he was returned to his vehicle.

Following the hearing, the district court determined that neither good cause nor excusable neglect justified defense counsel's failure to timely file his motions to suppress and they should therefore be denied. In the alternative, the district court found that the officer, pursuant to his community caretaking function, was justified in ascertaining whether Cutler needed assistance. The district court also found that, once the officer observed the handgun in Cutler's vehicle, he was authorized to investigate whether Cutler was unlawfully carrying a concealed weapon. The district court further found that the officer's reasonable belief that Cutler may have been armed and presently dangerous justified a limited search of Cutler's vehicle for weapons. The district court therefore denied Cutler's motions to suppress.

Cutler pled guilty to possession of a controlled substance and possession of a controlled substance with intent to deliver, reserving his right to appeal the district court's denials of his motions to suppress. These appeals followed.

## II.

## ANALYSIS

Initially, we address Cutler's contention that the district court erred in denying his motions to suppress as untimely. Pursuant to Idaho Criminal Rule 12(d):

> [A motion to suppress] must be filed within twenty-eight (28) days after the entry of a plea of not guilty or seven (7) days before trial whichever is earlier. In felony cases, such motions must be brought on for hearing within fourteen (14) days after filing or forty-eight (48) hours before trial whichever is earlier. The court in its discretion may shorten or enlarge the time provided herein, and for good cause shown, or for excusable neglect, may relieve a party of failure to comply with this rule.

Cutler filed his motions to suppress fifty-seven days following his pleas of not guilty and, thus, twenty-nine days after the permissible date to file his motions. The district court determined that the mere assertion of a heavy caseload was insufficient to support a finding of excusable neglect or good cause under Rule 12(d).

On appeal, Cutler fails to support his assertion that trial counsel's heavy caseload amounted to excusable neglect with any authority. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). However, Cutler has also failed to demonstrate that the district court erred by denying his motions to suppress on the merits. Therefore, we need not address whether the district court correctly determined that Cutler did not demonstrate excusable neglect or good cause for failing to timely file his motions to suppress.

Cutler contends that neither the officer's community caretaking function nor reasonable suspicion justified Cutler's detention. Cutler alleges that, even if the officer was justified in detaining him, the officer had no lawful basis to search his vehicle for weapons. Cutler argues that, therefore, the district court erred in denying his motions to suppress.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

### A. Detention

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Its purpose is to impose a standard of reasonableness upon the exercise of discretion by government agents and thereby safeguard the individual's privacy and security against arbitrary invasions. *Delaware v. Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979); *State v. Maddox,* 137 Idaho 821, 824, 54 P.3d 464, 467 (Ct.App. 2002). An investigative detention is constitutionally permissible when based upon reasonable suspicion, derived from specific articulable facts, that the person stopped has committed or is about to commit a crime. *State v. Salato,* 137 Idaho 260, 264, 47 P.3d 763, 767 (Ct.App.2001).

In this case, the district court found that the officer was authorized to detain Cutler because the officer's observation of the handgun in a place where it would be concealed if the vehicle door was closed gave rise to a reasonable suspicion that Cutler was carrying a concealed weapon without a permit. While in any motor vehicle, a person shall not carry a concealed weapon on or about his or her person without a license. I.C. § 18–3302(9). A person carrying a concealed weapon in violation of the provisions of this section shall be guilty of a misdemeanor. I.C. § 18–3302(14).

Cutler asserts that, even if the officer had a reasonable suspicion that Cutler was carry-

ing a concealed weapon at the time the officer saw the handgun, that suspicion was dispelled as soon as the officer determined that the handgun was unloaded. Cutler thus argues that reasonable suspicion did not justify his detention following the officer's removal of the handgun from the vehicle and at the time the officer searched his vehicle for weapons he was being illegally detained.

A firearm may be concealed legally in a motor vehicle so long as the weapon is disassembled or unloaded. I.C. § 18–3302(9). Further, an investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct.App.2004); *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct.App.2002). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct.App.2000). The investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *Roe*, 140 Idaho at 181, 90 P.3d at 931.

Immediately after observing the handgun, the officer removed it from Cutler's vehicle and determined that it was unloaded. Accordingly, at the time the officer searched Cutler's vehicle for weapons, the officer's reasonable suspicion that Cutler might have violated the laws pertaining to concealed weapons had been dispelled.

Nevertheless, reasonable suspicion of criminal activity is not the only justification for a limited seizure of a person. *Maddox*, 137 Idaho at 824, 54 P.3d at 467; *State v. Mireles*, 133 Idaho 690, 692, 991 P.2d 878, 880 (Ct.App.1999). A detention may also be reasonable under the officer's community caretaking function. *Maddox*, 137 Idaho at 824, 54 P.3d at 467; *Mireles*, 133 Idaho at 692, 991 P.2d at 880. Regardless of which justification is used, the Constitution requires that the intrusive action of the police be reasonable in view of all the surrounding circumstances. *Mireles*, 133 Idaho at 693, 991 P.2d at 881.

The district court determined that, in light of Cutler's extreme lethargy and his control of a vehicle and firearm, it was reasonable for the officer to ascertain whether Cutler needed assistance. The community caretaking function arises from the duty of police officers to help citizens in need of assistance and is totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. *Maddox*, 137 Idaho at 824, 54 P.3d at 467. Among the core community caretaking activities are the responsibilities of police to search for missing persons, mediate disputes, aid the ill or injured, and provide emergency services. *State v. Diloreto*, 180 N.J. 264, 850 A.2d 1226, 1236 (2004).

Reasonableness in community caretaking cases is determined by balancing the public need and interest furthered by the police conduct against the degree and nature of the intrusion upon the privacy of the citizen. *State v. Page*, 140 Idaho 841, 844, 103 P.3d 454, 457 (2004); *Mireles*, 133 Idaho at 693, 991 P.2d at 881. In order to justify the detention of a citizen, the officer must have a genuine and warranted concern rather than simply the officer's curiosity, an unsubstantiated suspicion of criminal activity, or an unwarranted concern that help might be needed. *Page*, 140 Idaho at 844, 103 P.3d at 457; *Maddox*, 137 Idaho at 824–25, 54 P.3d at 467–68. The reasonableness of an officer's action in pursuit of community caretaking is to be tested upon practical considerations of everyday life on which reasonable persons act. *Maddox*, 137 Idaho at 824, 54 P.3d at 467.

In this case, the officer testified that, although Cutler was not in need of immediate medical attention, he was unusually lethargic and "very unsure of what was going on." The officer indicated that, in light of Cutler's impaired condition, he was concerned with Cutler's ability to safely operate his vehicle and possess a firearm. The officer testified that Cutler's vehicle was not positioned in a parking space and, instead, was stopped diagonally in front of the closed store. The officer indicated that if Cutler had not been arrested, the officer would have

assisted Cutler in arranging alternate transportation. The officer testified that Cutler's extreme lethargy, the manner his vehicle was parked, and the presence of the handgun led the officer to conclude there was "something else wrong" and he had a duty to ascertain whether Cutler needed assistance.

The officer's testimony established that he was motivated by his genuine concern for Cutler's welfare. Following the frisk of Cutler for weapons, the officer knew that, in addition to the handgun, Cutler possessed its ammunition and two pocket knives. In light of Cutler's condition, it was reasonable for the officer to believe that it may have been unsafe to leave Cutler in control of a vehicle, a handgun with ammunition, and two knives. Further, Cutler's privacy interest had already been compromised to the extent of the emergency medical personnel's intrusion. That intrusion was minimally exceeded by the officer's decision to remain at the scene and ascertain whether further assistance was needed. Therefore, the public interest in preventing the type of harm that could result from improper handling of a motor vehicle or firearm justified a brief detention to ascertain whether Cutler needed transportation, was gravely disabled due to mental illness, presented a danger to himself or others, or simply needed to rest.

Cutler relies on this Court's decision in *Maddox* to support his position that, because Cutler was not in medical danger, the officer should have departed at the same time as the ambulance. In *Maddox*, an officer encountered a vehicle with two occupants who informed the officer they were looking for a friend. The officer followed the car into a motorcycle park and observed it parked off a dirt road. The officer attempted to approach the car out of concern the occupants had found their friend in need of medical assistance or the car would get stuck in the rugged terrain. As the officer approached, the car moved further up a motorcycle trail. The officer then activated his emergency lights to prevent the car from going further up the trail. During the ensuing detention, the officer discovered drugs and paraphernalia.

This Court reasoned that the officer's motivation in detaining the occupants was to prevent the car from getting stuck on the motorcycle trail and, although the decision to drive a car on a dirt motorcycle trail may not have been particularly wise, there was no risk of harm sufficient to warrant the officer's intrusion. *Maddox*, 137 Idaho at 825, 54 P.3d at 468. The community caretaking function does not allow an officer to seize individuals where no serious harm is threatened merely on a belief that the individual's decision or actions are unsound. *Id.* The speculative and anticipatory nature of the officer's concern could not be justified under the community caretaking function, which only justifies a detention if there is a present need for assistance. *Id.* Additionally, because the men moved their car away from the officer when he approached, it was not reasonable for the officer to believe the men needed assistance looking for their friend. *Id.* This Court thus concluded the community caretaking function did not justify the detention. *Id.* at 826, 54 P.3d at 469.

Unlike *Maddox*, the officer in this case did not observe any conduct which communicated that Cutler did not desire any assistance. Additionally, in *Maddox*, the risk of harm was limited to the potential need for a tow truck if the car became stuck whereas, here, the officer's conduct was intended to circumvent the risk of injury, which could have resulted if Cutler's condition made it unsafe for him to be in control of a vehicle, firearm with ammunition, or two knives. We are also not persuaded that, because Cutler did not require immediate medical treatment, he did not need assistance. To the contrary, that Cutler did not need emergency medical services gave rise to the possibility he was in need of other forms assistance, such as transportation or mental health intervention. Thus, the officer was not presented with a speculative risk but, rather, with the possibility of a present need for assistance.

Cutler attempts to liken his case to a situation where an officer encounters a motorist who has become fatigued and stopped his or her vehicle to take a nap. However, the officer testified that he was dispatched to assist the ambulance with an "incoherent

male." On cross-examination, Cutler asked the officer whether dispatch had provided information in addition to that a person was sleeping in a vehicle. The officer responded:

> It wasn't sleeping because it was—the ambulance responded. I don't recall what the verbiage was ... But because the ambulance had arrived there, there was some concern for the occupant's safety, because typically they wouldn't send an ambulance if somebody was sleeping in a car.

Additionally, the officer's testimony regarding Cutler's extreme lethargy, his disorientation, and the haphazard manner in which he had stopped his vehicle supported the conclusion that Cutler was not simply a fatigued motorist.

We conclude that the district court did not err by determining it was reasonable for the officer to believe that Cutler might have needed assistance. Therefore, the officer was authorized to briefly detain Cutler and ascertain whether he desired help or presented a safety risk to himself or others.

## B. Search for Weapons

Initially, we note that Cutler does not challenge the reasonableness of the frisk of his person for weapons. Rather, Cutler contends that, because the handgun was unloaded and he was cooperative during the encounter, the officer was not justified in searching Cutler's vehicle for weapons.

A search conducted without a warrant is presumptively unreasonable. *State v. Lamay*, 140 Idaho 835, 837–38, 103 P.3d 448, 450–51 (2004); *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The state may overcome the presumption of unreasonableness by demonstrating that the warrantless search fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Lamay*, 140 Idaho at 837–38, 103 P.3d at 450–51; *Weaver*, 127 Idaho at 290, 900 P.2d at 198. One narrow exception to the warrant requirement permits an officer to search a vehicle in furtherance of community caretaking activities. *United States v. Johnson*, 410 F.3d 137, 143–44 (4th Cir.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 461, 163 L.Ed.2d 350 (2005).

In contrast to the automobile exception to the warrant requirement, police acting as community caretakers do not need probable cause to search a vehicle because the probable cause standard is peculiarly related to criminal investigations, from which community caretaking activities are totally divorced. *Johnson*, 410 F.3d at 143–44. Community caretaking is based on the notion that police serve to ensure the safety and welfare of the citizenry at-large. *Diloreto*, 850 A.2d at 1233. Therefore, searches made pursuant to the community caretaking function in an effort to protect property or to ensure the safety of the public can be constitutionally reasonable. *Cady v. Dombrowski*, 413 U.S. 433, 447, 93 S.Ct. 2523, 2531, 37 L.Ed.2d 706, 718 (1973). Additionally, police need not abandon their own safety when reasonably engaged in activity pursuant to the community caretaking function. *Diloreto*, 850 A.2d at 1236. In considering whether a search was conducted reasonably as part of the community caretaking function, we ensure that the officer's stated motives for the search were not a pretext for a criminal investigation. *Johnson*, 410 F.3d at 145; *Diloreto*, 850 A.2d at 1236.

Here, the officer testified that he searched Cutler's vehicle because he wanted to ensure Cutler would not have access to a weapon when the officer returned Cutler to his vehicle. We have already determined that, in light of Cutler's extreme lethargy and disorientation, the haphazard manner the vehicle was parked and the handgun's presence, the officer was justified in believing that Cutler may have posed a safety risk to himself or others. Cutler urges that his lethargic behavior contradicted the conclusion he was dangerous and, thus, cannot support the search for weapons. However, although Cutler's lethargy and disorientation were not indicative of aggression, they were indicative that his ability to reason and act appropriately was impaired and, therefore, supported the officer's conclusion Cutler presented a danger to himself, to the officer, and to the general public.

Cutler's possession of the handgun, ammunition, and two knives gave rise to a reasonable belief that Cutler may have additional weapons in his vehicle. Further, the officer's motivation in searching Cutler's vehicle was not to find evidence of a crime. Rather, the officer searched Cutler's vehicle because he was concerned that, in light of Cutler's impaired condition, it was unsafe to allow him access to weapons. Therefore, the officer was authorized to conduct a limited search of Cutler's vehicle for weapons pursuant to his community caretaking function.

## III.

### CONCLUSION

The officer reasonably concluded Cutler may have needed assistance and, therefore, was justified in briefly detaining him in order to confirm or dispel that conclusion. Further, the officer was authorized to conduct a limited search for weapons pursuant to his role as community caretaker because he reasonably believed that Cutler may have additional weapons in his vehicle and, in light of his impaired condition, it was unsafe to allow Cutler access to weapons. Accordingly, regardless of whether the district court correctly concluded Cutler's motions should be dismissed as untimely, we conclude that the district court did not err by denying Cutler's motions to suppress. Cutler's judgments of conviction for possession of a controlled substance and possession of a controlled substance with intent to deliver are affirmed.

Judge LANSING and Judge GUTIERREZ concur.