**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 39591**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 340 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: January 23, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| WILLIAM JAMES FIFER, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Linda Copple Trout, Senior Judge. Hon. James A. Schiller, Magistrate.

Order of the district court affirming magistrate's order denying motion to suppress, <u>affirmed</u>.

Lovan Roker & Rounds, P.C., Caldwell, for appellant. Matthew J. Roker argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

_____

WALTERS, Judge Pro Tem

William James Fifer appeals from the judgment entered upon his conditional plea of guilty to driving under the influence (DUI), Idaho Code §§ 18-8004 and 18-8005. Fifer challenges the order denying his motion to suppress evidence. We affirm.

**I.**

**FACTS AND PROCEDURE**

A citizen called 911 after encountering a motorist who appeared to have stalled his car. The caller reported that she offered assistance to the motorist, but the motorist declined. Thereafter, the motorist pulled into a Walgreens' parking lot. The caller described the motorist as elderly and confused. She initially reported that the motorist appeared to be intoxicated or under the influence. Then, she stated that the motorist may be having symptoms of a stroke. At the end of the call, the caller said she did not think the motorist was intoxicated, but just confused. The caller described the vehicle as a blue Camaro and provided partial license plate

1

identification and the location of the vehicle to the 911 operator. She also provided the operator with her name and telephone number.

In response to the 911 call, a police officer approached Walgreens and observed a blue Camaro driven by an elderly male exiting the parking lot. The officer activated his overhead lights and pulled in front of the Camaro, preventing the vehicle from leaving. The officer identified the driver as Fifer and asked if he needed any medical assistance. Fifer responded that he was okay. As he spoke, the officer detected alcohol on Fifer's breath and asked him if he had been drinking. Fifer admitted that he had been drinking and he was arrested for DUI. A subsequent breath analysis revealed that Fifer's breath alcohol content was .182/.173.

Fifer was charged with DUI and filed a motion to suppress all evidence obtained as a result of the traffic stop. The magistrate denied Fifer's motion to suppress and Fifer entered a conditional guilty plea. Fifer timely filed a notice of appeal to the district court, and the district court affirmed the magistrate's decision. Fifer timely appeals.

## II.

## ANALYSIS

Fifer claims that all evidence obtained as a result of his traffic stop should be suppressed as the product of an unconstitutional seizure. On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008); *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Losser*, 145 Idaho at 672, 183 P.3d at 760; *DeWitt*, 145 Idaho at 711, 184 P.3d at 217. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Losser*, 145 Idaho at 672, 183 P.3d at 760; *DeWitt*, 145 Idaho at 711, 184 P.3d at 217.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts,

2

weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. The stop of a vehicle constitutes a seizure of its occupants and is therefore subject to Fourth Amendment restraints. *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979); *State v. Schumacher*, 136 Idaho 509, 37 P.3d 6 (Ct. App. 2001). When the reason for a stop is to investigate possible criminal activity, it must be based upon a reasonable, articulable suspicion that the person stopped has been or is about to be engaged in criminal behavior. *State v. Rawlings*, 121 Idaho 930, 932, 829 P.2d 520, 522 (1992); *State v. Fry*, 122 Idaho 100, 103, 831 P.2d 942, 945 (Ct. App. 1991). However, the investigation of criminal activity is not the only justification for a limited detention of a person. A detention is constitutionally permissible if it is reasonably conducted in furtherance of the government agent's community caretaking function. *See Cady v. Dombrowski*, 413 U.S. 433 (1973); *In re Clayton*, 113 Idaho 817, 818, 748 P.2d 401, 402 (1988); *State v. Mireles*, 133 Idaho 690, 991 P.2d 878 (Ct. App. 1999). The community caretaking function arises from the duty of police officers to help citizens in need of assistance, *State v. Wixom*, 130 Idaho 752, 754, 947 P.2d 1000, 1002 (1997), and it is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady*, 413 U.S. at 441.

In this instance, the magistrate denied Fifer's motion to suppress evidence on two grounds. First, the magistrate found that reasonable articulable suspicion existed to justify the stop for the purpose of criminal investigation. Second, the magistrate found that the traffic stop was appropriate under the community caretaking function. Fifer challenges both findings.

We determine that the seizure of Fifer was reasonable under the officer's community caretaking function. Fifer alleges that the community caretaking function is not applicable because: (1) the police officer did not observe any signs of distress from Fifer; (2) the information provided by the 911 caller did not demonstrate that an emergency existed; and (3) the police officer effectuated his overhead lights, thereby creating an unreasonable detention. In analyzing community caretaking function cases, Idaho courts have adopted a totality of the circumstances test. *Wixom*, 130 Idaho at 754, 947 P.2d at 1002; *State v. Schmidt*, 137 Idaho 301,

3

303, 47 P.3d 1271, 1273 (Ct. App. 2002). The constitutional standard is whether the intrusive action of the police was reasonable in view of all the surrounding circumstances. *Wixom*, 130 Idaho at 754, 947 P.2d at 1002; *Schmidt*, 137 Idaho at 303-04, 47 P.3d at 1273-74. Reasonableness is determined by balancing the public need and interest furthered by the police conduct against the degree and nature of the intrusion upon the privacy of the citizen. *State v. Godwin*, 121 Idaho 491, 495, 826 P.2d 452, 456 (1992); *Schmidt*, 137 Idaho at 304, 47 P.3d at 1274.[1]

The State points to two cases that are analogous to the instant case. In *State v. Cutler*, 143 Idaho 297, 141 P.3d 1166 (Ct. App. 2006), a police officer and an ambulance responded to reports of an incoherent man sitting in a vehicle parked haphazardly in front of a closed store. When the police officer arrived, medical personnel from the ambulance informed the officer that the man was extremely lethargic, but did not need any medical attention. When the ambulance departed, the officer observed a handgun on the ledge between the driver's seat and the doorsill. The officer removed the gun and removed Cutler from the vehicle. A subsequent frisk of Cutler revealed additional weapons. The officer then searched the vehicle and found methamphetamine and paraphernalia. On appeal following the denial of Cutler's motion to suppress, this Court considered Cutler's extreme lethargy, his disorientation, the haphazard manner in which he stopped his vehicle, and the possibility that he needed medical assistance. Based on those considerations, we concluded that "it was reasonable for the officer to believe that Cutler might have needed assistance. Therefore, the officer was authorized to briefly detain Cutler and ascertain whether he desired help or presented a safety risk to himself or others." *Id.* at 304, 141 P.3d at 1173.

In *Clayton*, a police officer observed a vehicle in a parking lot with its engine running and its headlights on. The vehicle was parked adjacent to a bar at an early morning hour. Clayton was sitting in the driver's seat with his head slumped forward. The officer opened the

---

[1]    Fifer alleges that "Idaho precedent applying the 'community caretaking function' has gone astray from the articulation given by the United States Supreme Court in *Cady*." Fifer claims that Idaho has "failed to recognize that to justify the seizure under the community care taking function, such a seizure must be 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" We disagree. Idaho courts have long recognized *Cady's* articulation. *See State v. Wixom*, 130 Idaho 752, 754, 947 P.2d 1000, 1002 (1997); *State v. Schmidt*, 137 Idaho 301, 303, 47 P.3d 1271, 1273 (Ct. App. 2002); *State v. Mireles*, 133 Idaho 690, 692-93, 991 P.2d 878, 880-81 (Ct. App. 1999).

vehicle's door, reached over Clayton, and removed the keys. After Clayton awoke, the officer discovered he was intoxicated and arrested him for DUI. Clayton challenged his arrest, claiming the officer illegally searched the vehicle when he removed the keys. The Idaho Supreme Court disagreed, determining that:

> Tested upon practical considerations of everyday life on which reasonable persons act, this situation falls outside the boundaries of normal conduct. The driver could have been hurt or sick, and in need of medical attention. [The officer] acted prudently and satisfied his caretaking function when investigating the vehicle.
> . . . It is reasonable to assume that he acted out of concern for Clayton's safety in securing the vehicle.

*Clayton*, 113 Idaho at 818, 748 P.2d at 402.

Fifer claims that *Cutler* and *Clayton* are distinguishable from the instant case. He argues that the officers in those cases personally observed the "obvious exigent circumstances" that allowed them to exercise their community caretaking function. In the instant case, Fifer argues that the officer did not observe him "to be incoherent or to appear in any sort of danger." Consequently, Fifer alleges the officer was unable to justify a seizure under the community caretaking function.

As discussed above, to determine whether a stop falls under the community caretaking function, we look to see if the stop was reasonable, based on balancing the public need and interest furthered by the police conduct with the degree and nature of the intrusion into privacy. Here, the officer was dispatched as a result of a 911 call. During the 911 call, the following statements were made by the identified caller:

CALLER:    Well, there's a guy in a car on Ustick, and um, I just tried to help him because it looked like his car was stalled.
. . . .
CALLER:    He seemed kind of confused too. So I'm hoping he's not having symptoms of a stroke or something.
. . . .
CALLER:    [B]ut he just was confused.

Based on these statements, we determine that the 911 call established the possibility of a medical emergency. Police officers have a duty under the community caretaking function to investigate medical emergencies. *See Clayton*, 113 Idaho at 818, 748 P.2d at 402 ("When [the police officer] observed the vehicle with its motor running, lights on, and the driver slumped forward, he had a duty as a police officer to investigate."). The public interest in preventing the

type of harm that could result from driving a vehicle while suffering from a medical emergency justifies a brief detention to ascertain whether Fifer needed assistance or presented a danger to himself or others. Had Fifer been experiencing a medical emergency, his own life and the lives of others could have been in peril had he been allowed back on the road. Therefore, it was reasonable for the officer to briefly detain Fifer in order to fulfill his community caretaking duty.

Fifer admits that "it would have been reasonable for the officer to approach [Fifer's] vehicle and ask [Fifer] if he was alright." However, Fifer alleges that the officer's use of the overhead lights without witnessing any traffic violations or signs of distress was unreasonable. Use of the overhead lights was necessary to stop Fifer and prevent the risk of his driving while impaired. Without such notice, Fifer could have exited the parking lot and entered the roadway, causing danger to himself and other drivers. We determine that the use of the overhead lights was reasonable in order to provide greater safety to Fifer, the officer, and other drivers.

Therefore, based on the totality of the circumstances, it was reasonable for the officer to stop Fifer and ascertain his well-being pursuant to the community caretaking function. Thus, the district court did not err in affirming the magistrate's decision to deny the suppression of evidence on this ground. We need not examine the magistrate's decision regarding reasonable articulable suspicion, having now affirmed the magistrate's ruling on community caretaking grounds.

## III.

## CONCLUSION

The magistrate denied Fifer's motion to suppress the evidence. The district court affirmed the magistrate's decision. Fifer has failed to demonstrate reversible error. Accordingly, the district court's order, on intermediate appeal, is affirmed.

Chief Judge GUTIERREZ and Judge LANSING **CONCUR.**